UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ESBIN & ALTER, LLP,

                                    Plaintiff,

              -against-

PAUL ZAPPIER and ADVANCED
TRADE SETTLEMENT, LLC,

                                    Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

08 Civ. 0313 (SCR) (GAY)

TO THE HONORABLE STEPHEN C. ROBINSON, United States District Judge:

       Plaintiff Esbin & Alter, LLP ("E&A") brings this action against defendants Paul Zappier

("Zappier") and Advanced Trade Settlement, LLC, wherein it alleges copyright infringement,

breach of contract, breach of confidence and fiduciary duty, trade secret misappropriation, and

unfair competition.  Presently before this Court is defendants' motion to dismiss the breach of

confidence/fiduciary duty claim for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure ("FRCP").  For the reasons that follow, I respectfully

recommend that defendants' motion to dismiss be denied.


**I.  RULE 12(b)(6) STANDARD OF REVIEW**

       In evaluating a motion to dismiss a complaint under FRCP 12(b)(6), this Court is "not to

weigh the evidence that might be presented at a trial but merely to determine whether the

complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  In

doing so, the Court "must accept as true all of the factual allegations set out in plaintiff's

complaint, draw inferences from those allegations in the light most favorable to plaintiff, and

construe the complaint liberally."  Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).  For

purposes of evaluating a 12(b)(6) motion, the complaint "is deemed to include any written

instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and citation omitted).  Ultimately, the Court must grant a 12(b)(6) motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).


## II.  FACTUAL ALLEGATIONS

The Court accepts as true the following facts taken from the complaint:

In January 2004, plaintiff, a law firm specializing in the secondary trade of syndicated loans and privately placed securities, hired Zappier as a computer programming consultant. Plaintiff retained Zappier for the purpose of modifying a preexisting computer program by implementing additional functions that would provide an effective and efficient way for plaintiff to, among other things, track trades, organize trade documents, generate status reports, and bill clients.  Plaintiff refers to this modified computer program as MATTERS.[1]

Zappier worked for plaintiff through August 31, 2007.  During the course of his employment, plaintiff provided Zappier with a wide array of information regarding the business of distressed debt trading so that Zappier could successfully design the MATTERS program. This information included general know-how as well as confidential documents, practices, and procedures specific to plaintiff's firm.  For example, plaintiff disclosed "highly confidential and proprietary work-flow charts, which outlined and described – on a step by step basis – the firm's methods of operation . . . " including "confidential procedures and business expertise that had

---

[1] The employment contract (attached to plaintiff's complaint) states that "Matters" was the name of the Microsoft Access 2003 program already in use by plaintiff.  The contract refers to the modification of the "Matters" program, including the new additional functions, as "The Works."  However, in an effort to remain consistent with the terminology used in the complaint, this Report and Recommendation will refer to the new program as "MATTERS."

been developed by [plaintiff] over many years of practice." See Complaint, ¶ 13.  Additionally, plaintiff supplied Zappier with proprietary documents that the firm used to execute business trades.  Overall, Zappier received the information necessary to design a computer program tailored specifically for plaintiff that included, among other things, trade tracking and status reporting, attendance keeping, a billing system, an invoice creator, and administrative applications such as a document generation and management system.  See Complaint, ¶ 14.

During the more than three years Zappier worked for plaintiff, he communicated regularly with the firm's partners, associates, and paralegal and administrative staff.  Zappier "became a familiar presence in the office and was included in firm meetings and planning sessions."  See Complaint, ¶ 15.  Plaintiff placed a tremendous amount of reliance on Zappier, believing he could improve the firm's operations through his knowledge and expertise of computer programming.  Zappier began to cultivate individual relationships with the firm's staff members, establishing a more personal level of trust with these employees.  Zappier took advantage of these personal relationships by actively seeking out additional confidential and proprietary information that was not directly related to his design work.  The firm's administrative and paralegal staff provided this confidential and proprietary information to Zappier on several occasions, without direction from the firm's attorneys.  See Complaint, ¶ 15.

Zappier specifically obtained such confidential and proprietary information from the administrative and paralegal staff in order to design a similar software product which would directly compete with plaintiff's business (the "ATS Software").  The ATS Software incorporated elements from MATTERS and much of the confidential and proprietary information provided to Zappier during the course of his employment.  In July 2007, while still employed by plaintiff, Zappier formed defendant Advanced Trade Settlement, LLC ("ATS"), a corporation created specifically to market and promote the ATS Software.  See Complaint, ¶ 16.

On August 15, 2007, plaintiff and Zappier executed an agreement which recognized and stated the terms and conditions of Zappier's employment as an independent consultant.  The

contract specified that Zappier was not to disclose to third parties any of the information designated and marked "CONFIDENTIAL" by E&A, nor use said materials for his own purposes. See Plaintiff's Exhibit 1, ¶ 9.  Plaintiff retained exclusive rights to any improvements or additions to its preexisting computer program, including the exclusive right to use, reproduce, and prepare derivative works of MATTERS.  See Plaintiff's Exhibit 1, ¶ 1-2.  Zappier agreed not to use MATTERS "in any manner that [would be] in business competition" with plaintiff.  See Plaintiff's Exhibit 1, ¶ 4.

In October 2007, Zappier attended the Loan Syndication and Trading Association Conference ("LSTA Conference") in New York City.  At the conference, Zappier used a vendor's trade booth to promote ATS and the ATS Software to other businesses involved in the secondary loan industry, many of which were either plaintiff's competitors or clients.  See Complaint, ¶ 17, 18.  Zappier distributed ATS marketing materials and provided demonstrations of the ATS Software.  Two E&A employees saw Zappier's software demonstration, and noticed that the ATS Software provided the user with several of the same functions and applications that Zappier designed specifically for plaintiff's use in the MATTERS program.

Upon learning of the ATS Software and Zappier's conduct at the LSTA Conference, plaintiff informed Zappier that he was in violation of the terms of his employment contract.  In November 2007, plaintiff demanded that Zappier cease any conduct that would violate the agreement, including further marketing or use of the ATS Software.  After Zappier rejected this demand, plaintiff filed the instant action in January 2008.

## III.  EXISTENCE OF A FIDUCIARY DUTY

Defendants move to dismiss the breach of fiduciary duty claim on the ground that plaintiff's allegations are insufficient to establish the existence of a fiduciary relationship between Zappier and plaintiff.  Defendants contend that the relationship that existed between Zappier and plaintiff was a standard business relationship that resulted from a one-time

commercial transaction.  Defendants further argue that such an arms-length transaction does not give rise to an implied fiduciary duty, absent allegations of an inherent imbalance between the parties or other extraordinary circumstances.

Under New York law, plaintiff must prove four elements in order to establish a fiduciary relationship: "(1) the vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself."  See Atlantis Info. Tech. v. CA, Inc., 485 F. Supp.2d 224, 231 (E.D.N.Y. 2007).  This type of relationship "is grounded in a higher level of trust than normally present in the marketplace between those involved in arms' length business transactions."  See JPMorgan Chase Bank v. IDW Group, LLC, No. 08 Civ. 9116 (PGG), 2009 WL 321222, at *8 (S.D.N.Y. Feb. 9, 2009).  Thus, a conventional business relationship will not give rise to a fiduciary duty absent extraordinary circumstances and obvious disparity between the parties.  See Atlantis, at 231-32.

When a contract is involved, courts look at the contract "to discover the nexus of the parties' relationship . . . ."  See JPMorgan, at *8.  Fiduciary liability, however, "is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation."  See id. (emphasis added).  Fiduciary liability can be established when a "broader, ongoing" relationship exists between the parties that extends beyond the four corners of the contract.  See id., at *9, *12.  Because the court must consider the ongoing conduct between the parties, a claim concerning the existence of a fiduciary relationship is necessarily fact-specific, and thus not usually subject to dismissal under Rule 12(b)(6).  See id., at *9.

"In determining whether a fiduciary relationship exists," the court may examine "whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge."  See id., at *9.  Although the complaint does not specifically allege reliance on Zappier's "superior knowledge," plaintiff does state that "E&A relied upon [Zappier]

tremendously to improve the firm's operations." See Complaint, ¶ 38.  It can be logically

inferred that plaintiff was in fact relying on Zappier's superior knowledge of, and expertise in,

computer programming and design, because plaintiff hired Zappier for the purpose of improving

the firm's operations through the implementation of a new computer program.

In order for Zappier to successfully complete his task, it was necessary for plaintiff to

repose confidence in him.  Plaintiff, necessarily, disclosed highly confidential and proprietary

information to Zappier on numerous occasions throughout the three-year relationship. Plaintiff

included Zappier in firm meetings and planning sessions.  See Complaint, ¶ 15.  Additionally,

plaintiff allowed Zappier access to its employees, including firm partners and associates and the

paralegal and administrative staff.  Regular communication with these employees was

necessary to further ensure the successful implementation of a new computer program that

would advance the efficient operation of plaintiff's practice.  See Complaint, ¶ 12.  Thus, "solely

by virtue of the relationship" that developed between plaintiff and Zappier, Zappier "was able to

create, cultivate, and foster relationships with [plaintiff's] employees."  See JPMorgan, at *10.

Furthermore, there is sufficient evidence of an "obvious disparity" between the parties,

which is the result of "information asymmetry."  See JPMorgan, at *12.  Plaintiff revealed highly

confidential and proprietary information to Zappier, in reliance upon his superior expertise in

computer programming.  There is no indication, however, that Zappier disclosed to plaintiff any

of his own confidential or sensitive information.

This alleged ongoing conduct between the parties "would take this case far outside the

world of the ordinary . . . arms' length business transaction."  See JPMorgan, at *9-10.  Plaintiff

placed Zappier "in a position of extraordinary trust . . . under circumstances in which [plaintiff]

may have been entitled to assume that [defendant] would act with [plaintiff's] best interests in

mind."  See id. at *10.  Plaintiff has alleged sufficient facts to establish that it reposed a trust and

confidence in Zappier that went beyond the type parties to a conventional business relationship

usually seek.  Cf. Atlantis, at 231-32.  Accordingly, I conclude that plaintiff has sufficiently alleged the existence of a fiduciary relationship.


## IV.  DUPLICATIVE CLAIMS

Defendants alternatively contend that plaintiff's breach of fiduciary duty claim is duplicative of the breach of contract claim.  Under New York law, "a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand."  See Robin Bay Assocs., LLC v. Merrill Lynch & Co., No. 07 Civ. 376 (JMB), 2008 WL 2275902, at *3 (S.D.N.Y. June 3, 2008).  However, dismissal of the breach of fiduciary duty claim is not appropriate when the claim "is based, at least in part, on facts other than those alleged in the breach of contract claim[ ]."  See JPMorgan, at *12.

"[A]n action for breach of fiduciary duty [ ] requires a showing of 'deceitful intent' on the part of the fiduciary."  See Banco Espirito Santo De Investimento v. Citibank, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *17 (S.D.N.Y. Dec. 22, 2003) (quoting Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991)).  An affirmative act of betrayal may be sufficient to establish the breach of fiduciary duty.  See Robin Bay Assocs., at *4.

Plaintiff bases its breach of fiduciary duty claim on the fact that Zappier actively sought to obtain confidential and proprietary documents, not directly related to his employment tasks, from the administrative and paralegal staff—outside the direction of the firm's attorneys. Plaintiff alleges that Zappier specifically obtained said documents in order to facilitate his design of the ATS Software, and incorporated confidential and proprietary information from said documents into the ATS Software in order to enrich his own interests.  See Complaint, ¶¶ 15, 40-41.  Accepting these facts as true, plaintiff has adequately pled an act of affirmative betrayal that could constitute a breach of fiduciary duty.

Plaintiff does not, however, rely on these same facts to establish its breach of contract claim.  Instead, plaintiff focuses on Zappier's misuse of the material marked "CONFIDENTIAL"

that he received from E&A staff, with authorization from E&A attorneys.  The contract provides that Zappier hold such marked information "in confidence forever" and specifically prohibits Zappier from using such information "for any purpose . . . that is in business competition with [E&A]."  See Plaintiff's Exhibit 1, ¶¶ 4,9.  The breach of contract claim is grounded on the allegations that Zappier used designated confidential information in designing the ATS Software, and that said conduct explicitly violated the terms of his employment contract.  See Complaint, ¶¶ 34, 35.

In order to sufficiently plead a claim for a breach of fiduciary duty that is independent of any contractual duty, "[p]laintiff must set forth allegations that, apart from the terms of the contract . . ., [demonstrate that] the parties created a relationship of higher trust than would arise from [the contract] alone . . . ."  See Robin Bay Assocs., at *3.  As discussed above, plaintiff has sufficiently pled the existence of a fiduciary duty on the part of Zappier, separate and distinct from his contractual duties.  When a plaintiff "has plausibly alleged the existence of a fiduciary relationship and has stated a cause of action that is sufficiently distinct from its breach of contract claim[ ]," it is appropriate to deny a motion to dismiss the breach of fiduciary claim.  See JPMorgan, at *12.  Accordingly, I conclude that plaintiff's breach of fiduciary duty claim is not duplicative of the breach of contract claim.


**V.  CONCLUSION**

For all of the foregoing reasons, I conclude, and respectfully recommend, that defendants' motion to dismiss should be denied.

## VI.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended by Rule 72(b), the parties shall have ten (10) days from receipt of this Report to serve and file written objections to the Report and Recommendation.  If copies of this report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Stephen C. Robinson and not to the undersigned.

Dated: __April 3__, 2009
       White Plains, New York

Respectfully Submitted,

GEORGE A. YANTHIS, U.S.M.J.