UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ESBIN & ALTER, LLP,

                Plaintiff,            08 Civ. 313

   -against-                      OPINION

ZAPPIER, et al,

                Defendants.

------------------------------------X



A P P E A R A N C E S:

    Attorney for Plaintiff

    ALTER & ALTER LLP
    300 East 42nd Street, 10th Floor
    New York , NY 10017
    By:  Daniel S. Alter, Esq.

    Attorneys for Defendants

    THE BOYD LAW GROUP, PLLC
    230 Park Avenue
    Suite 1000
    New York , NY 10169
    By:  Michael J. Popsis, Esq.

    SABHARWAL, NORDIN & FINKEL
    350 Fifth Avenue, 59th Floor
    New York, NY 10118
    By:  Adam Finkel, Esq.

**Sweet, D.J.**

Esbin & Alter, LLP ("E&A" or "Plaintiff) moves for a preliminary injunction against Paul Zappier ("Zappier"), RAD Technologies ("RAD"), and Sabharwal, Globus & Lim, LLP ("SGL") (collectively, the "Defendants") and their use of a software program to part of which E&A claims it owns a copyright. A preliminary injunction is granted to the extent that Defendants may not convey to another person or entity in any matter whatsoever the computer software designed and implemented by Zappier and RAD for SGL.

**Prior Proceedings**

Familiarity with prior proceedings in this case is assumed. Only those matters relevant to the current motion will be recounted here.

On January 14, 2008, Plaintiff filed a complaint against SGL, Zappier, and his closely held companies Advanced Trade Settlement ("ATS") and RAD Technologies, Inc. ("RAD"), of which Zappier is president and sole shareholder, and which he runs out of his home, for

1

numerous commercial torts including copyright infringement. On January 15, 2010, Plaintiffs submitted a show cause motion for a preliminary injunction against Defendants Zappier, RAD and SGL enjoining them and those in privity with them from "using, reproducing, and/or conveying to another person or entity in any matter whatsoever the computer software designed and implemented by Zappier and RAD for SGL (the "SGL Program"); (2) "directing that the SGL Program be removed from SGL's offices or rendered sufficiently inoperable to insure that no additional infringement may occur during the pendency of this action; (3) directing that all copies of SGL source code within Defendants' custody or control . . . be impounded; and (4) directing that, within 14 days of the entry of this Order, Defendants' counsel file declaration with the Court describing the steps taken . . to comply with the Court's Order . . . ."  (Order to Show Cause at 2).

The Order to Show Cause was signed on January 18, 2010, and the motion was heard and marked fully submitted on January 27, 2010.

2

**Facts**

E&A is a boutique firm specializing in the secondary trade of syndicated loans and privately placed securities. SGL is a law firm with the same practice and a direct competitor of E&A. Zappier is the president and sol shareholder of RAD Technologies, a consulting firm.

In March 2004, E&A signed a Software Maintenance Agreement with RAD, and engaged Zappier to develop a billing and document management program for the firm (the "E&A Program"). See Declaration of Ilyssa R. Alter ("IRA Decl."), ¶ 2 & Ex A. RAD's standard written agreement had no provisions regarding the confidentiality of E&A's proprietary information or the ownership of the intellectual property created during their relationship, and the parties agreed that (1) neither RAD nor Zappier would disclose any of E&A's confidential or proprietary information to anyone outside E&A; (2) neither RAD nor Zappier would use any of E&A's confidential or proprietary information other than to provide E&A with programming services; and (3) all intellectual property created for E&A by Zappier, including rights covered by copyright, were owned by E&A (the "Oral Agreement"). See id. ¶ 4.

3

In October 2004, Julie Globus ("Globus"), a partner at SGL, and RAD executed a Software Development Agreement whereby RAD took "full responsibility for developing and maintaining on a sustained basis, a Custom Electronic Matters Billing System . . . to be used at [Globus's] Firm." See Daniel S. Alter Declaration ("DSA Decl.") Ex. D ¶ 1.1. The written agreement contained a clause granting SGL an exclusive and indefinite license to use "any custom software, electronic system or inventions made, developed, or implemented" under their agreement. See id. Ex. D. ¶ 1.3. There is no evidence that SGL recorded this exclusive license with the United States Copyright Office. See id. ¶ 8 & Ex. E.

In June 2005, E&A and Zappier signed an agreement "confirming [their] understanding" that Zappier was working for E&A as an independent contractor, and updating various logistical details about his work for E&A. See IRA Decl. Ex. B.

In August 2007, Zappier and E&A signed an agreement memorializing in full their agreement of 2004, including the Oral Agreement, confirming that E&A owned the

4

rights to the program Zappier had developed for them.  See IRA Decl. ¶ 15 & Ex. D.  E&A has alleged expenditures of $500,000 for the development of the E&A Program, IRA Decl. ¶ 15, and its dominance in its field of practice.

E&A hired Robert Zeidman ("Zeidman"), an expert in software analysis and digital forensic engineering, to examine the source code for both the E&A Program and the SGL Program to determine whether the latter contained constituent elements of the former.  Zeidman determined that there were significant similarities between the two programs, including identity between 93% of the source code files and all 54 tables in each program.  Zeidman Declaration ¶¶ 10, 47, 69-79.

E&A brought this action specifically to enjoin SGL from using the program many of the constituent elements of which they allege they own the copyright.

**The Legal Standard**

A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm

5

absent an injunction; and (2) either a likelihood of success on the merits of sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor. Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008)

In order to demonstrate a likelihood of success on the merits, a party "need not show that success is an absolute certainty. [The party] need only make a showing that the probability of prevailing is better than fifty percent. There may remain considerable room for doubt." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985), overruled on other grounds, O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Anacomp, Inc. v. Shell Knob Servs., Inc., No. 93 CIV. 4003 (PKL), 1994 WL 9681, at *6 (Jan. 10, 1994, S.D.N.Y.); Computer Assocs. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y. 1992). In performing the balance of hardships inquiry, the Court must determine "which of the two parties would suffer more grievously if the preliminary injunction motion were wrongly decided." Tradescape.com v. Shivaram, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999) (footnote omitted).

**Plaintiffs Are Likely to Suffer Irreparable Harm Absent an Injunction**

"[W]hen a copyright is infringed, irreparable harm is presumed, and the copyright holder is entitled to an injunction." Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 124 (2d Cir. 1994); see also Tradescape.com, 77 F. Supp. 2d at 410. But "even without the presumption of irreparable harm generally applied in copyright infringement cases, the jeopardy to [a party's] investment and competitive position caused by [an infringer's] wholesale copying of many of its key [software] operating programs would satisfy the requirement of irreparable harm needed to support a preliminary injunction." Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1254 (3d Cir. 1983).

That analysis applies here. E&A invested significant time and money in developing the E&A program so as to maximize the efficiency of the firm's practice and thereby maintain or improve its market leadership position. See IRA Decl. ¶¶ 15-16. Moreover, E&A's competitive position has been threatened by the ways in which the SGL program has allowed SGL to exploit the program's functionality and E&A's proprietary expertise as embodied in the software. IRA Decl. ¶ 19; Zeidman Decl. ¶¶ 11, 77-

7

80. That erosion will only be made worse if SGL is permitted to disseminate its software to other competitors. The threat is particularly significant given E&A's dominant position in the market over SGL. See Fabkom, Inc. v. R.W. Smith & Assocs., Inc, 1996 WL 531873, at *6 (S.D.N.Y. Sept. 19, 1996) ("[Plaintiff's] dominant position in the broker market is threatened by [defendant's] software. The likelihood of irreparable harm absent an injunction is real."); see also Norbrook Laboratories Ltd. v. G.C.Hanford Mfg. Co., 297 F. Supp. 2d 463, 492-93 (N.D.N.Y. 2003), aff'd 126 Fed. Appx. 507 (2d Cir. 2005) (irreparable harm presumed when trade secrets have been misappropriated; Muze, Inc. v. Digital On-Demand, Inc., 123 F. Supp. 2d 118, 131 (S.D.N.Y. 2000) ("The potential loss of market advantage has been held to constitute irreparable harm."); Anacomp, Inc., 1994 WL 9681, at *6 ("[The] loss of market leadership, like the loss of a trade secret, could not be compensated through money damages."); Computer Assocs. Int'l, Inc. v. Bryan, 784 F. Supp. 982, 986 (E.D.N.Y. 1992).

Defendant object that Plaintiff's are moving for a preliminary injunction over three months after Zeidman made his determinations that the programs bore substantial

8

similarities to one another and that that delay should vitiate any argument in favor of irreparable harm. SGL Pl.'s Opp'n at 3. However, Plaintiff responds that it was SGL's delay in producing various central witnesses for deposition, who were relevant to the infringement investigation, as well as their unwillingness to engage in settlement discussions in December 2009, which resulted in the delay in bringing the suit against SGL and its order to show cause. See DSA Reply Decl. ¶ 9. A "delay caused by a plaintiff's goof faith efforts to investigate an infringement does not rebut the presumption of irreparable harm." Tom Doherty Assocs., Inc. v. Saban Enertainment, Inc., 60 F.3d 27, 39 (2d Cir. 1995).

**Plaintiffs Have Demonstrated a Likelihood of Success on the Merits**

In order to establish a copyright infringement claim a plaintiff must demonstrate that "(1) it owns a valid copyright; and (2) the defendants copied constituent elements of the work that are original." Torah Soft Ltd. v. Drosnin, 136 F. Supp. 2d 276, 282 (S.D.N.Y. 2001). Unlawful copying "generally is established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible [sic]

9

material." Tradescape.com, 77 F. Supp. 2d at 412 (internal quotation marks omitted).

Plaintiffs have demonstrated that they own a valid copyright. See DSA Decl. Ex D in Ex A. E&A's copyright registration certificate is "prima facie evidence that the copyright is valid," and "creates a rebuttable presumption that the work in question is copyrightable." Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997) (quotation marks omitted). The registration certificate "shifts the burden of proving the invalidity of the copyright" to Defendants." Id.

Defendants argue that the copyright is invalid because the ownership rights to the disputed constituent elements of the E&A Program and the SGL Program were never properly transferred from Zappier to E&A in the first place; they argue that, according to the "work for hire" provision of the Copyright Act, those rights vested in RAD and not Zappier and so Zappier as an individual could not assign them to E&A. SGL Def.'s Opp'n at 7. On this record, it appears that the 2004 Oral Agreement, in which Zappier purported to transfer rights to the software he created while working for E&A to E&A, was made between E&A

10

and Zappier in his capacity as President of RAD, rather than as an individual. See IRA Decl. ¶¶ 4-5. Therefore, even if the rights to the program vested in RAD, a valid transfer was made to E&A at that point. Nothing in this record suggests, as Defendants argue, that this was a "simple non-exclusive licensing agreement." SGL Def's Opp'n at 7. The August 2007 agreement incorporated the details of the 2004 written and oral agreements and E&A based their application for a copyright on that letter. Later documents signed by Zappier and E&A do refer to his status as an independent contractor. However, for the purposes of this motion and given the other evidence on the record, the capacity in which Zappier operating during those transactions need not invalidate the copyright.

Defendants' rely on Davis v. Blige, 505 F.3d 90 (2d Cir. 2007) to support their argument that they have a valid defense against infringement. Davis held that retroactive copyright transfers and licenses are barred insofar as they extinguish the rights of co-owners to sue for infringements. See id. at 106-07. In memorializing the March 2004 agreement with Zappier through the August 2007 agreement, E&A validated the earlier oral transfer of rights to E&A "ab initio." Imperial Residential Design,

11

Inc. v. Palms Dev. Group, Inc., 70 F.3d 96, 99 (11th Cir. 1995); Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 591 (7th Cir. 2003); see also Eden Toys, Inc. v. Florelee Undergarment Co., 697 F.2d 27, 36 (2d Cir. 1982). Therefore SGL has not defeated the presumption of validity given to the copyright registration certificate which E&A has obtained.

Furthermore, E&A has carried its burden in demonstrating that the SGL program contains constituent elements that duplicate those to which E&A has a copyright. First, SGL had access to E&A's program, through Zappier, who designed it. Second, Plaintiff has sufficiently demonstrated for this stage of the proceedings that there is significant overlap between the constituent elements of the E&A and SGL programs, which Zeidman, Plaintiff's software analyst expert identified after filtering out "non-protectable" elements. Zeidman Decl ¶ 21. Beyond the overlap between 93% of the source code and all 54 tables in the programs, Zeidman also identified numerous other "sections of the programs where code similarities are uncanny." Tradescape.com, 77 F. Supp. 2d at 417. Such markings include: (1) "identically matching identifiers with long, complicated, uncommon names," Zeidman Decl. ¶;

12

(2) perfectly corresponding sequences of functional code, see id. ¶¶ 51, 56; patterns of matching comments, see id. ¶¶ 52-53, 56; functional code matching commented-out code; see id. ¶¶ 54, 56, blank lines at the exact location o previously commented-out code, see id. ¶¶ 55, 56-57, and numerous other examples of identical correlations between design elements, sequentially numbered names, and non-functional code, see id. ¶¶ 58-63. These digital fingerprints provide strong indicators of copying. See Tradescape.com, 77 F. Supp. 2d at 417 ("identical coding" for program functionality, "appearance of empty source code modules," and "files in exactly the same location in both programs" held evidence of copying).

Zeidman concluded that there "is a multiplicity of ways in which [the SGL] code could have been developed,: and that although "[s]ections of functional code must conform to certain programming rules, . . . the exact placement of comments, functions, and methods as well as the names of elements are a creative decision by the developer and not dictated by external restraints." Zeidman Decl. ¶ 56. In Cybermedia, Inc. v. Symantec Corp., the district court held that plaintiff had shown a likelihood of success on its software infringement claim,

13

and issued a preliminary injunction, because "any of [defendants'] hundreds of [source] code lines . . . could have been written differently, even as constrained by functional necessity and the use of common programming tools." 19 F. Supp. 2d 1070, 1072 (N.D. Ca. 1998). The same is true here.

## The Balance of Hardships Favor the Plaintiff

Absent a preliminary injunction prohibiting Defendants to share any information related to the SGL program, or any trade secrets which Zappier may have obtained with others of E&A's competitors, E&A will continue to lose the investment of time, money, and other firm resources that it put towards developing the E&A Program, and SGL will continue to benefit from its use. Furthermore, its market dominance will continue to be eroded. "Any diminution of . . . market share would be difficult to reverse," and therefore qualifies as a substantial hardship. Fabkom, Inc., 1996 WL 531873, at *14; see also Tradescape.com, 77 F. Supp. 2d at 411.

Given that the preliminary injunction imposed today does not prevent SGL itself from using the SGL program, even if it were to suggest that it is harmed in not profiting from distribution of information relating to the program, such harm does not outweigh that suffered by E&A.

**Conclusion**

In light of the foregoing authority and conclusions, the preliminary injunction is granted insofar as SGL may convey to another person or entity in any matter whatsoever the computer software designed and implemented by Zappier and RAD for SGL pending resolution at trial of E&A's copyright infringement and other claims. Defendants are ordered to post a $25,000 bond to cover court costs and costs of enforcement of any eventual judgment against them.

It is so ordered.

**New York, NY**
**February 3, 2010**

ROBERT W. SWEET
U.S.D.J.