KILPATRICK STOCKTON LLP
Frederick L. Whitmer (FW8888)
Marc A. Lieberstein (ML7116)
31 West 52nd Street, 14th Floor
New York, New York 10019
Tel:  (212) 775-8700
Fax:  (212) 775-8800
mlieberstein@kilpatrickstockton.com
fwhitmer@kilpatrickstockton.com

*Attorneys for Defendants Paul Zappier,*
*Advanced Trade Settlement, LLC, and*
*RAD Technologies, Inc., and Counterclaim-Plaintiffs*
*Paul Zappier and Advanced Trade Settlement, LLC*

---

ESBIN & ALTER, LLP,

        Plaintiff,

    v.

PAUL ZAPPIER, ADVANCED TRADE
SETTLEMENT, LLC, RAD TECHNOLOGIES, INC.,
SABHARWAL, GLOBUS & LIM, LLP, JULIE D.
GLOBUS, and STAN LIM,

        Defendants.

---

PAUL ZAPPIER and ADVANCED TRADE
SETTLEMENT, LLC,

        Counterclaim-Plaintiffs,

    v.

ESBIN & ALTER, LLP, SCOTT ESBIN
(individually), and ILYSSA ALTER (individually),

        Counterclaim-Defendants.

---

Civil Action No. 08 CV 0313 (RWS)

## DEFENDANTS PAUL ZAPPIER, ADVANCED TRADE SETTLEMENT, LLC, AND RAD TECHNOLOGIES, INC.'S ANSWER TO PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES AND <u>COUNTERCLAIMS</u>

US2008 1649599.1

Defendants Paul Zappier ("Zappier"), Advanced Trade Settlement, LLC ("ATS"), and RAD Technologies, Inc. ("RAD") (Zappier, ATS, and RAD collectively "Defendants"), by their attorneys, Kilpatrick Stockton LLP and through this Answer and all prior and subsequent submissions, answer the Second Amended Complaint (the "Complaint") of Plaintiff as follows:

## NATURE OF THE ACTION

1. Defendants admit the allegation in Paragraph 1 of the Complaint that Plaintiff is a law firm, admit that Plaintiff purports to bring an action against Defendants for copyright infringement, breach of contract, breach of confidence and fiduciary duty, trade secret misappropriation, and unfair competition, and fraud, admit that RAD was hired as an independent contractor to design a computer program for Plaintiff, admit that RAD signed a written agreement with Plaintiff containing terms that governed the relationship between the parties, and otherwise deny the allegations in this Paragraph.

2. Defendants admit the allegation in Paragraph 2 of the Complaint that Zappier formed ATS, admit that Zappier, as an employee of ATS, created the ATS Software, and otherwise deny the allegations in this Paragraph.  The ATS Software is a global application accessible via the internet that facilitates distressed loan settlement trades in real time and automates the process for closing distressed loan settlement trades.  The MATTERS software created for Plaintiff (the "E&A MATTERS Program") is an internal local law office billing software program that primarily tracks billing and time entries, creates invoices, and stores data associated with distressed loan settlement documents for the purpose of

creating billing invoices.  The E&A MATTERS Program does not automatically

process distressed loan settlement trades.

3.    Defendants deny the allegations in Paragraph 3 of the Complaint.

4.    Defendants deny the allegations in Paragraph 4 of the Complaint.  Defendants did

not use Plaintiff's computer code from the E&A MATTERS Program in the ATS

Software.  Any overlap in source or object code between the ATS Software and

the E&A MATTERS Program is solely the result of the fact that Defendant

Zappier extracted that code from Defendant ATS's ATS Software and entered it

into the E&A MATTERS Program.  Defendants further deny that Plaintiff owns a

valid copyright in the E&A MATTERS Program.

5.    Defendants deny the allegations in Paragraph 5.

6.    Defendants admit the allegation in Paragraph 6 of the Complaint that Defendant

Sabharwal, Globus & Lim ("SGL") hired RAD to design software that would

assist SGL in their client/attorney billing in connection with its law practice

which, like E&A's law practice, relates to distressed debt (the "SGL MATTERS

Program"), and Defendants otherwise deny the allegations in this Paragraph.

Defendant Zappier, as an employee of RAD, designed the SGL MATTERS

Program using code from the MATTERS program he designed for the law firm of

Mandel & Esbin LLP ("Mandel") from 1998 through 2004 (the "MATTERS '98

Program") and code from the MATTERS program he designed for the law firm of

Kieselstein & Lee LLP ("K&L") in 1999 (the "K&L MATTERS Program"),

which predate the E&A MATTERS Program.  Prior to developing the E&A

MATTERS Program for E&A, Zappier, on behalf of RAD, created and showed

E&A, as well as Scott Esbin and Ilyssa Alter, a demo of the updated MATTERS

'98 Program ("MATTERS '00 Program") (the MATTERS '98 Program,

MATTERS '00 Program, and K&L MATTERS Program are collectively referred

to as the "Pre-Existing MATTERS Software").

7. Defendants deny the allegations in Paragraph 7 of the Complaint, except admit

that Plaintiff purports to seek the intervention of this Court.

## JURISDICTION AND VENUE

8. Defendants admit the allegations in Paragraph 8 of the Complaint.

9. Defendants admit the allegations in Paragraph 9 of the Complaint.

## PARTIES

10. Defendants admit the allegations in Paragraph 10 of the Complaint.

11. Defendants admit the allegations in Paragraph 11 of the Complaint.

12. Defendants admit the allegations in Paragraph 12 of the Complaint.

13. Defendants admit the allegations in Paragraph 13 of the Complaint.

14. Defendants admit the allegations in Paragraph 14 of the Complaint.

15. Defendants admit the allegations in Paragraph 15 of the Complaint.

16. Defendants admit the allegations in Paragraph 16 of the Complaint.

## GENERAL ALLEGATIONS

17. Defendants deny the allegations in Paragraph 17 of the Complaint, except admit

that E&A retained RAD as an independent contractor and Zappier was an

employee of RAD, and admit that RAD was hired to customize a pre-existing

computer program for E&A, and aver that the "preexisting computer program"

that Zappier modified was the Pre-Existing MATTERS Software.

18. Defendants admit the allegation in Paragraph 18 of the Complaint that on August 15, 2007, E&A and Zappier entered into an agreement, but deny that the agreement annexed to the Complaint as Exhibit A is a true and correct copy of the final version of the agreement that Defendant Zappier reviewed, and deny that the August 15, 2007 Agreement recognized, affirmed or otherwise memorialized any earlier oral agreements concerning RAD and/or Zappier's employment. Defendants further deny that the August 15, 2007 Agreement covers all of the terms and conditions of RAD's employment by Plaintiff.  There were two agreements that RAD entered into with Plaintiff prior to August 15, 2007: (1) a software maintenance agreement in 2004 and (2) a twenty-eight hours per week agreement in 2005.

19. Defendants deny the allegations in Paragraph 19 of the Complaint, except admit that Zappier worked with E&A's partners, associates, and administrative staff, and aver that Defendants RAD and Zappier performed no further work on the E&A MATTERS Program between August 15, 2007, when Zappier signed the August 15, 2007 agreement with Plaintiff, and August 31, 2007, the termination of RAD's employment with Plaintiff.

20. Defendants deny the allegations in Paragraph 20 of the Complaint.

21. Defendants deny the allegations in Paragraph 21 of the Complaint, except admit that the programming RAD undertook for Plaintiff included such aspects as a billing system, invoice creator, trade status reporting function, attendance keeping, certain administrative functions, and integration with the Microsoft® Outlook Program.  With the exception of attendance keeping and the integration

of the Microsoft® Outlook program, all of these program applications were included in the Pre-Existing MATTERS Software.

22. Defendants deny the allegations in Paragraph 22 of the Complaint. Defendant RAD was employed as an independent contractor by Plaintiff and Zappier was an employee of RAD. Defendant Zappier was not in a position of "substantial trust" with Plaintiff and Zappier did not ask for and/or receive proprietary documents from Plaintiff.

23. Defendants deny the allegations in Paragraph 23 of the Complaint, except admit that ATS was formed in July 2007. The E&A MATTERS Program contains some overlapping elements found in the ATS Software, but these were designed and installed by RAD into the E&A MATTERS Program upon request by E&A after they were part of the ATS Software and all of this took place prior to the August 15, 2007 agreement, when Defendant RAD was an independent contractor, Zappier was a work for hire employee of RAD, and RAD owned all rights to all code designed and developed for E&A, SGL, K&L, and ATS.

24. Defendants admit the allegations in Paragraph 24 of the Complaint, except to deny knowledge or information sufficient to form a belief as to the truth of the allegation that many of the representatives at the LSTA conference were either clients or competitors of Plaintiff.

25. Defendants admit the allegations in Paragraph 25 of the Complaint.

26. Defendants admit the allegations set forth in Paragraph 26 of the Complaint.

27. Defendants deny the allegations in Paragraph 27 of the Complaint, except admit that both the ATS Software and the E&A MATTERS Program provide the user

with a list of trades and their status according to client and trade confirmation.
Both the ATS Software and the E&A MATTERS Program provide the user with
trade ticket information, but in the ATS Software this is done in real-time, and in
the E&A MATTERS Program the information is static.  Both the ATS Software
and the E&A MATTERS Program contain a trade combination feature – a feature
that allows the person inputting trade information to link the documents – but this
is just a tag in the E&A MATTERS Program, i.e., the E&A MATTERS program
permits one to manually identify the related trades but does nothing else.  In the
ATS Software the trade combination feature not only automatically identifies the
related trades but it automatically combines all documents for the related trades.
The ATS Software reprocesses the related trade documents and circulates the new
related trade documents to the buyer, seller, and agent for review and approval.

28. Defendants deny the allegations set forth in Paragraph 28 of the Complaint.

29. Defendants admit the allegations in Paragraph 29 of the Complaint.

30. Defendants admit the allegations in Paragraph 30 of the Complaint.

## **CLAIM I**

(Copyright Infringement Against Zappier and ATS)

31. Defendants Zappier and ATS adopt and incorporate their responses to the
allegations set forth in each and every preceding paragraph of the Complaint as if
fully set forth herein.

32. Defendants Zappier and ATS admit the allegations in Paragraph 32 of the
Complaint, but deny that the agreement annexed to the Complaint as Exhibit A is
a true and correct copy of the final version of the agreement that Defendant

Zappier reviewed.  Further, Defendants Zappier and ATS aver that the August 15, 2007 Agreement purports to transfer to Plaintiff certain rights only to specific alterations made to the Pre-Existing MATTERS Software that were made exclusively for Plaintiff, and not the Pre-Existing MATTERS Software that existed prior to August 15, 2007, nor does it purport to grant to Plaintiff any rights to the ATS Software.

33. Defendants Zappier and ATS admit the allegations in Paragraph 33 of the Complaint.

34. Defendants Zappier and ATS admit the allegations in Paragraph 34 of the Complaint.

35. Defendants Zappier and ATS deny the allegations in Paragraph 35 of the Complaint, except to admit that the E&A MATTERS Program does contain some overlapping elements found in the ATS Software, but these were designed and installed by Zappier, as an employee of RAD, upon request by E&A after they were part of the ATS Software and all of this took place prior to the August 15, 2007 Agreement, when Defendant RAD was an independent contractor and owned all rights to all code designed and developed by Zappier.

36. Defendants Zappier and ATS deny the allegations in Paragraph 36 of the Complaint.

37. Defendants Zappier and ATS deny the allegations in Paragraph 37 of the Complaint.

## CLAIM II

(Breach of Contract Against Zappier)

38. Defendant Zappier adopts and incorporates his responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

39. Defendant Zappier denies the allegations in Paragraph 39 of the Complaint, except admit that Exhibit A purports to be a copy of the August 15, 2007 Agreement and we refer to the document for its precise terms.

40. Defendant Zappier admits the allegations in Paragraph 40 of the Complaint, but denies that there was any reference to MATTERS in Paragraph 1 of the August 15, 2007 Agreement.

41. Defendant Zappier admits the allegations in Paragraph 41 of the Complaint, but denies that there was any reference to MATTERS in Paragraph 4 of the August 15, 2007 Agreement.

42. Defendant Zappier admits the allegations in Paragraph 42 of the Complaint.

43. Defendant Zappier denies the allegations in Paragraph 43 of the Complaint.

44. Defendant Zappier denies the allegations in Paragraph 44 of the Complaint.

## <u>CLAIM III</u>

(Breach of Confidence/Fiduciary Duty Against Zappier)

45. Defendant Zappier adopts and incorporates his responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

46. Defendant Zappier denies the allegations in Paragraph 46 of the Complaint.

47. Defendant Zappier denies the allegations in Paragraph 47 of the Complaint.

48. Defendant Zappier denies the allegations in Paragraph 48 of the Complaint.

49. Defendant Zappier denies the allegations in Paragraph 49 of the Complaint.

50. Defendant Zappier denies the allegations in Paragraph 50 of the Complaint.

## CLAIM IV

(Trade Secret Misappropriation Against Zappier and ATS)

51. Defendants Zappier and ATS adopt and incorporate their responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

52. Defendants Zappier and ATS deny the allegations in Paragraph 52 of the Complaint.

53. Defendants Zappier and ATS deny the allegations in Paragraph 53 of the Complaint.

54. Defendants Zappier and ATS deny the allegations in Paragraph 54 of the Complaint.

55. Defendants Zappier and ATS deny the allegations in Paragraph 55 of the Complaint.

56. Defendants Zappier and ATS deny the allegations in Paragraph 56 of the Complaint.

57. Defendants Zappier and ATS deny the allegations in Paragraph 57 of the Complaint.

## CLAIM V

(Unfair Competition Against Zappier and ATS)

58. Defendants Zappier and ATS adopt and incorporate their responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

59. Defendants Zappier and ATS deny the allegations in Paragraph 59 of the Complaint.

60. Defendants Zappier and ATS deny the allegations in Paragraph 60 of the Complaint, except admit that ATS was created during the time that RAD was employed as an independent contractor by Plaintiff.

61. Defendants Zappier and ATS deny the allegations in Paragraph 61 of the Complaint.

62. Defendants Zappier and ATS deny the allegations in Paragraph 62 of the Complaint.

63. Defendants Zappier and ATS deny the allegations in Paragraph 63 of the Complaint.

64. Defendants Zappier and ATS deny the allegations in Paragraph 64 of the Complaint.

## **CLAIM VI**

### (Fraud Against Zappier)

65. Defendant Zappier adopts and incorporates his responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

66. Defendant Zappier denies the allegations in Paragraph 66 of the Complaint.

67. Defendant Zappier denies the allegations in Paragraph 67 of the Complaint.

68. Defendant Zappier admits the allegations in Paragraph 68 of the Complaint that Zappier and Plaintiff negotiated the terms of the August 15th Agreement for more than a year, and during that period they created approximately six draft versions of the contract, otherwise Defendant Zappier denies the allegations in this Paragraph.

69. Defendant Zappier denies the allegations in Paragraph 69 of the Complaint.

70. Defendant Zappier denies the allegations in Paragraph 70 of the Complaint, except admits that Zappier formed ATS, drafted a business plan for ATS, and sought financial backing for ATS while RAD was employed as an independent contractor by Plaintiff and Zappier was an employee of RAD.

71. Defendant Zappier denies the allegations in Paragraph 71 of the Complaint.

72. Defendant Zappier denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Complaint.

73. Defendant Zappier denies the allegations in Paragraph 73 of the Complaint.

## CLAIM VII

(Copyright Infringement Against RAD and Zappier)

74. Defendants RAD and Zappier adopt and incorporate their responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

75. Defendants RAD and Zappier admit the allegation in Paragraph 75 of the Complaint that SGL hired RAD to design the SGL MATTERS Program, and otherwise deny the allegations in this Paragraph.

76. Defendants RAD and Zappier admit the allegations in Paragraph 76 of the Complaint.

77. Defendants RAD and Zappier admit the allegations in Paragraph 77 of the Complaint.

78. Defendants RAD and Zappier deny the allegations in Paragraph 78 of the Complaint, except admit that the SGL and E&A MATTERS Programs were being created at the same time, during the time period that RAD was an independent contractor and Zappier was an employee of RAD, and accordingly, the early versions of the SGL MATTERS Program incorporate some aspects of the E&A MATTERS Program that are also present in the Pre-Existing MATTERS Software, which was created prior to RAD's employment with Plaintiff.

79. Defendants RAD and Zappier deny the allegations in Paragraph 79 of the Complaint.

80. Defendants RAD and Zappier deny the allegations in Paragraph 80 of the Complaint, except admit that RAD provided SGL with the SGL MATTERS Program.

## **CLAIM VIII**

(Copyright Infringement Against SGL)

81. Defendants adopt and incorporate their responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

82. Defendants admit the allegations in Paragraph 82 of the Complaint.

83. Defendants deny the allegations in Paragraph 83 of the Complaint.

84. Defendants deny the allegations in Paragraph 84 of the Complaint.

## CLAIM IX

(Aiding & Abetting Breach of Fiduciary Duty Against SGL)

85. Defendants adopt and incorporate their responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

86. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the Complaint.

87. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 of the Complaint.

88. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 of the Complaint.

89. Defendants admit the allegations in Paragraph 89 of the Complaint.

90. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 of the Complaint.

91. Defendants deny the allegations in Paragraph 91 of the Complaint.

92. Defendants deny the allegations in Paragraph 92 of the Complaint, except to admit that Zappier told Julie Globus and Stan Lim about ATS while RAD was employed as an independent contractor by Plaintiff and Zappier was an employee of RAD.

93. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93 of the Complaint.

94. Defendants deny the allegations in Paragraph 94 of the Complaint.

95. Defendants deny the allegations in Paragraph 95 of the Complaint.

96. Defendants deny the allegations in Paragraph 96 of the Complaint, except admit that SGL invited Zappier to its 2007 annual social outing.

97. Defendants admit the allegations in Paragraph 97 of the Complaint, except deny knowledge or information that one of the major financial institutions was a client of Plaintiff at this time.

98. Defendants admit the allegations in Paragraph 98 of the Complaint.

99. Defendants deny the allegations in Paragraph 99 of the Complaint.

100.    Defendants deny the allegations in Paragraph 100 of the Complaint.

## CLAIM X

(Trade Secret Misappropriation Against Zappier, RAD, SGL, Globus, and Lim)

101.    Defendants adopt and incorporate their responses to the allegations set forth in each and every preceding paragraph of the Complaint as if fully set forth herein.

102.    Defendants deny the allegations in Paragraph 102 of the Complaint.

103.    Defendants deny the allegations in Paragraph 103 of the Complaint.

104.    Defendants deny the allegations in Paragraph 104 of the Complaint.

105.    Defendants admit the allegations in Paragraph 105 of the Complaint.

106.    Defendants deny the allegations in Paragraph 106 of the Complaint, except to admit that the SGL Program contains a trade ticket report.

107.    Defendants deny the allegations in Paragraph 107 of the Complaint.

108.    Defendants deny the allegations in Paragraph 108 of the Complaint.

109.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 of the Complaint.

110.    Defendants deny the allegations in Paragraph 110 of the Complaint.

## CLAIM XI

### (Unfair Competition Against SGL, Globus, and Lim)

111.    Defendants adopt and incorporate their responses to the allegations set

forth in each and every preceding paragraph of the Complaint as if fully set forth

herein.

112.    Defendants deny the allegations in Paragraph 112 of the Complaint.

113.    Defendants deny the allegations in Paragraph 113 of the Complaint.

114.    Defendants deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 114 of the Complaint.

115.    Defendants deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 115 of the Complaint.

116.    Defendants deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 116 of the Complaint.

## JURY DEMAND

117.    Plaintiff's jury demand is not a factual averment requiring an answer.  Its

right to a jury trial, if any, is a matter of law.

## PRAYER FOR RELIEF

Paragraphs 118 to 128 of the Complaint state a prayer for relief to which no

responsive pleading is required.  To the extent a responsive pleading is required,

Defendants deny that Plaintiff is entitled to any relief whatsoever.

## DEFENDANTS' AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiff lacks a valid registration for the copyright alleged in the Complaint, Plaintiff has failed to invoke the subject matter jurisdiction of this Court.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent they lack standing to assert claims for the claimed copyright.

Plaintiff lacks standing because, upon information and belief, Plaintiff does not own the copyright at issue and does not have a valid certificate of copyright registration for the copyright at issue.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that they have committed fraud upon the Copyright Office.  Upon information and belief, Plaintiff misrepresented the authorship and ownership of the copyright at issue and submitted misleading deposit copies of the source code to the Copyright Office.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claimed copyright lacks originality and therefore the claimed copyright is invalid and unenforceable.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands because, upon information and belief, Plaintiff filed fraudulent and misleading

applications and deposit copies with the United States Copyright Office for the purpose of instituting this action against Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

The ATS Software of which Plaintiff complains was created independently of, and without reference to, the E&A MATTERS Program

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of fair use.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of innocent intent.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's copyright is very thin because it is derived from a prior work created by Defendant RAD for Mandel in 1998.  E&A, as a matter of law, cannot own a copyright in any subject matter in Defendants' pre-existing MATTERS program.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of copyright misuse.

Plaintiff is making false copyright claims or is using copyright claims in violation of public policy and copyright policy in seeking to claim rights in excess of any valid right under copyright.

## TWELTH AFFIRMATIVE DEFENSE

There is no substantial similarity between copyrightable elements of the E&A MATTERS Program owned by E&A and the ATS Software or the SGL MATTERS Program.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of license, consent, acquiescence, waiver, laches and/or estoppel.

## FIFTEENTH AFFIRMATIVE DEFENSE

The actions or omissions of Defendants did not cause Plaintiff to suffer damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Even if Plaintiff's allegations are true, which they are not, Plaintiff is not entitled to any monetary damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the failure to mitigate damages.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendants are entitled to a set off for damages to Defendants caused by Plaintiff.

## NINETEENTH AFFIRMATIVE DEFENSE

The alleged claims are neither well-grounded in fact nor warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law within the meaning of Rule 11 of the Federal Rules of Civil Procedure.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff cannot establish grounds upon which an award of attorneys' fees can be granted.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendant SGL has an earlier written exclusive license for the software at issue, which is considered a transfer of ownership under the Copyright Act.

In addition to having an invalid, later written transfer, Plaintiff has not validly recorded such document with the Copyright Office and has otherwise not satisfied the requirements of 17 U.S.C. § 205.

RAD has registered its copyright in the software licensed to SGL, and SGL has satisfied the requirements of 17 U.S.C. § 205.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of de minimis copying.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims for statutory damages are barred because Plaintiff did not register any claim to copyright prior to the commencement of the allegedly infringing acts, and otherwise has not complied with the statutory prerequisites of the Copyright Act for such damages.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because if any copying occurred, it was limited to copying of unprotectable elements of the software.

WHEREFORE having fully answered the Plaintiff's Complaint, the Defendants respectfully request dismissal of the Complaint, with prejudice, an award of costs, including attorney's fees, and such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

Counterclaim-plaintiffs, Paul Zappier ("Zappier") and Advanced Trade Settlement, LLC ("ATS") (collectively "Counterclaim-plaintiffs) sue Esbin & Alter, LLP ("E&A"), Scott Esbin, and Ilyssa Alter (collectively, "Counterclaim-defendants") and state:

### JURISDICTION AND VENUE

1. This is an action for fraud on the copyright office, trade libel and tortious interference under New York law.

2. This Court has subject matter jurisdiction over Counterclaim-plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1338 and 1367, and has jurisdiction over the state claims pursuant to its supplemental jurisdiction under 28 U.S.C. §1367.

3. This Court has personal jurisdiction over the Counterclaim-defendants because, *inter alia*, E&A commenced this action before this Court, and E&A and its principals Scott Esbin and Ilyssa Alter reside and do business in this district.

4.  Venue is proper in this district because Counterclaim-defendants' principal place of business is in this district, and Zappier's residence, and the principal place of business of ATS is in this district.

## THE PARTIES

5.  E&A is a limited liability partnership, duly organized under the laws of the State of New York.  E&A's principal place of business is located at 497 South Main Street, New City, New York 10956.

6.  Scott Esbin is a principal of E&A, a limited liability partnership, duly organized under the laws of the State of New York.  E&A's principal place of business is located at 497 South Main Street, New City, New York 10956.

7.  Ilyssa Alter is a principal of E&A, a limited liability partnership, duly organized under the laws of the State of New York.  E&A's principal place of business is located at 497 South Main Street, New City, New York 10956.

8.  Zappier is an individual who resides at 11 Kings Drive, Middletown, New York 10941.

9.  ATS is a limited liability company, duly organized under the laws of the State of New York.  ATS's principal place of business is located at 11 Kings Drive, Middletown, New York 10941.

## GENERAL ALLEGATIONS

10. On April 30, 1997, RAD was hired by the law firm of Mandel & Esbin LLP ("Mandel") to create a computer program to assist the firm with billing and time management (the "MATTERS '98 Program").  As the founder of RAD Technologies, Inc. ("RAD"), Zappier developed the MATTERS '98 Program

for Mandel.  Zappier, an employee of RAD, continued to work for Mandel until 2004, developing and customizing the MATTERS '98 Program.

11. In 1999, with the permission of Mandel, RAD was hired as an independent contractor by the law firm of Kieselstein & Lee LLP ("K&L") to develop a custom MATTERS program for its legal practice (the "K&L MATTERS Program").  Zappier, as an employee of RAD, tailored RAD's MATTERS '98 program to K&L's specific needs.

12. During the time period set forth in Paragraph 10, Marisol Torres worked as a paralegal at Mandel and was familiar with the MATTERS '98 Program. Marisol left Mandel and started working at E&A.  Marisol introduced Zappier to E&A in February, 2003.

13. In February, 2003, Zappier revised the MATTERS '98 Program and created a demo version of the program to show to E&A (the "MATTERS '00 Program").  With permission from Mandel, Zappier, on behalf of RAD, presented this program as a demo to E&A in late February, 2003.

14. E&A hired RAD as an independent contractor to develop a custom MATTERS program for its legal practice and on March 8, 2004, RAD signed a software maintenance contract with E&A.  Zappier, as an employee of RAD, took the MATTERS '98 Program that he had created for Mandel, the MATTERS '00 program that he showed as a demo to E&A, and the K&L MATTERS Program (collectively, the "Pre-Existing MATTERS Software") and customized these programs for E&A (the "E&A MATTERS Program").  Zappier continued to service and customize this version of the Pre-Existing

MATTERS Software for E&A through August 15, 2007.  Zappier did no work on the E&A MATTERS Program between August 15, 2007 and August 31, 2007, when RAD's employment with E&A was terminated.

15. At the same time that Zappier, on behalf of RAD, was working for E&A customizing the E&A MATTERS Program, Zappier and RAD were also working for the law firm of Sabharwal, Globus & Lim, LLP ("SGL").  RAD was hired by SGL on October 29, 2004 to develop a custom MATTERS program for its legal practice.  Just as he did at E&A, Zappier, on behalf of RAD, took the Pre-Existing MATTERS Software, and customized it for SGL (the "SGL MATTERS Program").

16. Upon information and belief, at all times E&A, SGL, Scott Esbin, and Ilyssa Alter were aware that RAD and Zappier were working for E&A and SGL between 2004 and 2007 and that this work was to create for each firm a customized version of RAD's Pre-Existing MATTERS Software.

17. On August 15, 2007, Zappier signed a document that purported to transfer to E&A certain rights only to specific alterations made to the Pre-Existing MATTERS Software that were made exclusively for E&A, and not the Pre-Existing MATTERS Software that existed prior to August 15, 2007, nor does it purport to grant to E&A any rights to the ATS Software.

18. Upon information and belief, E&A then applied for and received a copyright registration for the E&A MATTERS Program (the "E&A Copyright Registration").

19. The E&A Copyright Registration fraudulently purports to claim ownership to the entire E&A version of the MATTERS program, as it does not disclaim ownership in any of the Pre-Existing MATTERS Software.  E&A also fraudulently claims to be a joint author of the E&A MATTERS Program in the E&A Copyright Registration when in fact Zappier had no assistance from E&A in the creation of the E&A MATTERS Program.

20. Upon information and belief, any similarities in either the coding or user interface between the E&A MATTERS Program and the SGL MATTERS Program can be found in the pre-existing MATTERS '98, MATTERS '00, and/or K&L MATTERS Programs.

21. In June, 2005, while supporting the E&A MATTERS Program and the SGL MATTERS Program, Zappier had an idea for an automated distressed loan settlement system.  Zappier discussed this idea with Julie Globus and Stan Lim, partners at SGL.  Upon information and belief, there was no automated distressed loan software system on the market at this time.

22. Zappier finished building the first prototype of an automated distressed loan settlement system (the "ATS Software") in December, 2006.  The finished ATS Software is a global application, accessible via the internet, in real time. The ATS Software does not contain any of E&A's confidential information or proprietary materials, and does not compete with E&A's business.  The ATS Software is a global application accessible via the internet that facilitates distressed loan settlement trades in real time and automates the process for closing distressed loan settlement trades.  The E&A MATTERS Program is an

internal local law office billing software program that primarily tracks billing and time entries, creates invoices, and stores data associated with distressed loan settlement documents for the purpose of creating billing invoices.  The E&A MATTERS Program does not automatically process distressed loan settlement trades.

23.  Starting in early 2007, Zappier began to market the ATS Software to interested financial and legal institutions, including J.P. Morgan, Trade Settlement Inc., and Mysys Limited.  On July 20, 2007, Zappier formally formed ATS.

24.  On October 18, 2007, Zappier attended the Loan Syndication and Trading Association Conference ("LSTA Conference") in New York City.  Zappier had a vendor's trade booth at the LSTA Conference that he used to present a demo of the ATS Software.

25.  As a result of the originality of the ATS Software, the need for this type of software in the distressed loan services field, and Zappier's marketing efforts, several financial institutions expressed an interest in purchasing or licensing the ATS Software and/or loan closing services from Zappier and ATS, some offering a substantial amount of money.

26.  Upon information and belief, the value of the ATS Software was $25 million.  If the ATS Software were licensed to any of these financial institutions, the value of such licensing agreements would have been approximately $18,000,000 annually.

27. Upon information and belief, prior to E&A's lawsuit against Defendants, E&A and/or its principals Scott Esbin and Ilyssa Alter knowingly made false statements to representatives of the financial institutions interested in purchasing and/or licensing the ATS Software.

28. Upon information and belief, as a result of Counterclaim-defendants' statements and conduct, each prospective purchaser/licensee for the ATS Software broke off discussions with ATS and ATS lost the opportunity to sell or license the ATS Software.  Both Zappier and ATS's reputation in the financial services industry are now marred due to the statements and conduct of Counterclaim-defendants.

## COUNT I

(Fraud on the Copyright Office Against E&A, Scott Esbin, and Ilyssa Alter)

29. Counterclaim-plaintiffs adopt and incorporate the allegations set forth in Paragraphs 1 thought 28 of the Counterclaim as if fully set forth herein.

30. Upon information and belief, having admitted in Paragraph 17 of its own Second Amended Complaint that the E&A MATTERS Program was based on "preexisting software", E&A knowingly failed to identify the pre-existing software versions of the E&A MATTERS Program, including the MATTERS '98 Program, MATTERS '00 Program, and K&L MATTERS Program, in its application to the Copyright Office for the registration of the E&A MATTERS Program.

31. Upon information and belief, knowledge of the existence of the earlier versions of the E&A MATTERS Program might have caused the Copyright

Office to reject E&A's copyright application for the E&A MATTERS

Program, or to narrow the copyright E&A now alleges it owns.

32. As a result of E&A, Scott Esbin, and Ilyssa Alter's knowing omission to the

Copyright Office, the Copyright registration for the E&A MATTERS

Program is invalid and/or unenforceable as a matter of law.

## COUNT II

(Trade Libel Against E&A, Scott Esbin, and Ilyssa Alter)

33. Counterclaim-plaintiffs adopt and incorporate the allegations set forth in

Paragraphs 1 through 32 of the Counterclaim as if fully set forth herein.

34. Upon information and belief, representatives of E&A and/or Scott Esbin and

Ilyssa Alter made false public statements to representatives/employees of J.P.

Morgan ("J.P. Morgan"), Trade Settlement Inc. ("TSI"), Mysys Limited

("Mysys"), and possibly others in the financial industry, telling each of them

that Zappier and ATS stole the ATS Software from E&A, that E&A is the true

owner of the ATS Software, and that they were going to sue ATS and Zappier.

35. Upon information and belief, these false statements were made for the

malicious purpose of destroying the reputation of Zappier and ATS and to

deter the interested financial institutions from engaging in business with

Zappier and ATS for the ATS Software and services.

36. Upon information and belief, Counterclaim-defendants made these statements

knowing that they were not true. At the time the statements were made by

E&A and/or Scott Esbin and Ilyssa Alter, no judgment had been rendered by

any court to determine the ownership or misappropriation of the ATS
Software or E&A's trade secrets.

37. Upon information and belief, as a consequence of Counterclaim-defendants'
actions, Zappier's business negotiations concerning the ATS Software with
J.P. Morgan, TSI, and Mysys, among other financial institutions, came to a
sudden halt and Zappier and ATS were not able to enter into any contracts for
the sale or license of the ATS Software and services.

38. Upon information and belief, Zappier and ATS have not been able to market
the ATS Software and services to this day because of the false public
statements made by Counterclaim-defendants, and this has caused Zappier and
ATS not only financial harm, but harm to their reputation, in an amount
exceeding twenty-five million dollars.

## COUNT III

(Tortious Interference Against E&A, Scott Esbin, and Ilyssa Alter)

39. Counterclaim-plaintiffs adopt and incorporate the allegations set forth in
Paragraphs 1 through 38 of the Counterclaims as if fully set forth herein.

40. In September, 2007, Zappier and J.P. Morgan were negotiating the terms of a
potential sale of the ATS Software to J.P. Morgan.  Zappier and ATS had
signed J.P. Morgan's confidentiality agreement and the parties were in the
process of discussing the terms of the potential sale.  A representative of J.P.
Morgan orally told Zappier that J.P. Morgan was considering offering ATS
twenty-five million dollars for the ATS Software.

41. In October, 2007, Zappier, ATS, and TSI were negotiating the terms of a potential sale of the ATS Software to TSI.  Zappier received a letter of intent from TSI.  TSI wanted to purchase the ATS Software and offered Zappier a structured purchase price, with some money up front and the remainder in the form of a salary and bonus.

42. In March, 2008, Zappier, ATS, and Mysys were also negotiating the terms of a potential sale of the ATS Software to Mysys.  Zappier received a letter of intent from Mysys.  During the course of the negotiations between Zappier and Mysys, an offer of six million dollars for the purchase of the ATS Software was on the table.

43. Upon information and belief, but for E&A's malicious and illegal conduct and false public statements, Zappier would have entered into a contract with at least one of these financial institutions for the sale of the ATS Software in an amount exceeding twenty-five million dollars.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim-plaintiffs respectfully request a judgment from this Court as follows:

A.  On Count I against E&A, Scott Esbin, and Ilyssa Alter, Counterclaim-plaintiffs seek:

    i.    a judicial declaration that E&A has engaged in fraud on the Copyright Office; and

    ii.    a judicial declaration that E&A's copyright registration for the E&A MATTERS Program is invalid or unenforceable;

iii.    a judicial declaration that Counterclaim-plaintiffs did not infringe Counterclaim-defendants copyright.

B.  On Count II against E&A, Scott Esbin, and Ilyssa Alter Counterclaim-plaintiffs seek:

i.    a judicial declaration that E&A, Scott Esbin, and/or Ilyssa Alter have engaged in trade libel in violation of New York law;

ii.    actual damages, consequential damages, special damages, and punitive damages in an amount no less than $25,000,000, or in an amount to be determined at trial; and

iii.    such other and further relief as the Court deems just and proper.

C.  On Count III against E&A, Scott Esbin, and Ilyssa Alter Counterclaim-plaintiffs seek:

i.    a judicial declaration that E&A, Scott Esbin, and/or Ilyssa Alter have engaged in tortious interference in violation of New York law;

ii.    actual damages, consequential damages, special damages, and punitive damages in an amount no less than $25,000,000, or in an amount to be determined at trial; and

iii.    such other and further relief as the Court deems just and proper.

D.  A Court ordered public retraction by E&A, Scott Esbin, and Ilyssa Alter, acknowledging their false statements about Zappier and ATS, and that they have no right to prevent ATS from selling and/or licensing the ATS Software; and

E.  A Court order requiring E&A to pay all of Counterclaim-defendants'

attorneys' fees and costs incurred in connection with this matter.

Dated:  November 1, 2010
      New York, New York           KILPATRICK STOCKTON LLP


      _/s/ Marc A. Lieberstein_____
      Frederick L. Whitmer (FW8888)
      Marc A. Lieberstein (ML7116)
      31 West 52nd Street, 14th Floor
      New York, New York 10019
      Tel:  (212) 775-8700
      Fax:  (212) 775-8800
      fwhitmer@kilpatrickstockton.com
      mlieberstein@kilpatrickstockton.com

      *Attorneys for Defendants Paul Zappier,*
      *Advanced Trade Settlement, LLC, and*
      *RAD Technologies, Inc., and Counterclaim-*
      *Plaintiffs Paul Zappier and Advanced Trade*
      *Settlement, LLC*